UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID I. K.,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 3:21-CV-5904-DWC

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

BACKGROUND

Plaintiff filed for disability insurance benefits and supplemental security income in June 2019, alleging a disability onset date of September 10, 2015. Administrative Record (AR) 15. His applications were denied initially and on reconsideration. *Id*. On April 16, 2021, a telephonic hearing was held before an administrative law judge (ALJ). AR 31-65. On April 26, 2021, the

ALJ decided Plaintiff was not disabled. AR 12-30. The Appeals Council denied Plaintiff's request for review, making the Commissioner's decision final. AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## THE ALJ's FINDINGS

The ALJ found Plaintiff to suffer from the severe impairments of degenerative disc disease of the cervical spine, sprains, hypertension, and asthma. AR 17-18. The ALJ found that the combination of Plaintiff's impairments did not meet or equal any Listing. AR 18. The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work limited by no more than frequently climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; the ability to balance, stoop, or crouch but no crawling or kneeling; only

occasional reaching overhead bilaterally; the ability to frequently handle, finger, and feel on the right; only occasional exposure to vibrations, hazards, dust, fumes, odors, or pulmonary irritants; and the need to shift positions from standing to sitting or back, while on task, for one to two minutes every 30 minutes. AR 19. The ALJ found that Plaintiff is unable to perform any past relevant work, but he would be able to perform the jobs of sorter, hand packer, and inspector, meaning he is not disabled. AR 23-25.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting his testimony, lay witness testimony, and some of the medical evidence, all of which resulted in an erroneous RFC and step five finding. *See generally* Dkt. 13. The Commissioner disagrees. *See generally* Dkt. 14. For the reasons that follow the Court concurs with the Commissioner.

I.  Plaintiff's Credibility

Plaintiff argues the ALJ improperly rejected his testimony.

A.  Credibility Regulations

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

When assessing a claimant's credibility the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

However, affirmative evidence of symptom magnification, or malingering, relieves an ALJ from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id*. at 579.

B. <u>Analysis</u>

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting his testimony regarding the severity of his symptoms. Dkt. 13 at 13-18. The Commissioner maintains that because the ALJ found affirmative evidence in the record of malingering she was not required to give any additional reasons for discounting Plaintiff's subjective reports, much less clear and convincing ones. Dkt. 14 at 2. In his reply, Plaintiff insists the ALJ did not explicitly find that Plaintiff was malingering. Dkt. 15 at 6-7. According to Plaintiff, "none" of the treatment notes the ALJ pointed to constitute "affirmative evidence of malingering." *Id*.

The record absolutely reflects a findings of malingering, symptom magnification, possible secondary gain motivation, and general lack of a medical explanation for many of Plaintiff's reported symptoms. The ALJ began:

> The records also indicate that **a "disability mentality" was a possible factor for his ongoing cognitive complaints** (2F/14). Additionally, at the psychological consultative examination on February 18, 2020, it was noted that there were **no deficit[s] in the claimant's ability** to understand, recall, or follow through on instructions during the mental status examination or memory function tests, regardless of complexity (13F/8). He was able to tolerate changes easily and was able to and was able to [sic] easily maintain the pace, persistence, effort, energy, and concentration needed to complete the interview and testing process without any evidence of fatigue or distractibility (13F/8). **The examiner expressed skepticism as to the severity of some the claimant's complaints**. Based on the overall evidence, the undersigned finds that these are non[-]severe impairments, as the evidence does not show that these conditions cause more than minimal limitations on the claimant's ability to perform work-related activities (SSR 85-28).

AR 18 (emphasis added).

> A provider noted that **his objective findings do not explain his symptoms** (2F/12). Another provider noted **concern with "secondary gain"** (14F).
>
> * * *
>
> In fact, the records indicate that an adequate neurologic explanation for his symptoms had not been found (2F/11). **The records also mention possible malingering and often state that the objective findings do not explain his symptoms** (2F/7, 12; 7F/18). At an independent medical examination on July 12, 2019 it was determined that the **claimant's subjective complaints were not supported by the objective medical findings and that there were no objective neurological findings** (4F/11).

AR 19 (emphasis added).

> The claimant's complaints of constant pain are not supported by the medical evidence of record. The more recent EMG and MRI show **improved findings**. The evidence shows that the **claimant has not sought much care and is on a low dose of Gabapentin**. The records **do not document any injections or surgeries** related to his impairments. At the hearing, he testified that he was taking less Gabapentin than prescribed and was taking "breaks" from taking his medication. **Malingering and lack of objective findings to support his subjective complaints are repeatedly mentioned in the records.**

AR 21 (emphasis added).

Thus, the Court concurs with the Commissioner that the ALJ was not required to provide clear and convincing reasons to conclude that Plaintiff was not fully credible. Nevertheless, the ALJ did list additional reasons, such as the discrepancy between the degree of pain Plaintiff claimed to suffer and how he managed it, writing:

> He stated that he takes prescription strength Aleve and has been on Gabapentin a "couple different times." He indicated that **he did not renew his Gabapentin prescription from June 2020 to December 2020 due to "the lockdown" and then said that he had some saved up, because he never took the full amount prescribed.** When asked about the availability of telehealth appointments during Covid, **he did not explain why he had not sought a telehealth appointment**, during which he could have renewed his pain medication prescription, and **acknowledged that he was entirely off Gabapentin for about a month because he forgot about it** and wanted to give his body a break from medication. He stated that **injections have been recommended** and he has one scheduled.

AR 19 (emphasis added).

The amount, type, and effectiveness of treatment are important considerations when weighing a claimant's allegations. 20 C.F.R. §§ 404.1529(c)(3)-(c)(4), 416.929(c)(3)-(c)(4); SSR 16-3p at *8. Furthermore, the failure to follow treatment can "cast doubt on the sincerity" of the claimant's testimony concerning her symptoms. *Fair v. Bowen*, 533 F.2d 597, 603 (9th Cir. 1989). Plaintiff's arguments to the contrary, such as that the ALJ should have credited his claim he had an injection "scheduled" and that a doctor did recommend cervical spine surgery, only buttress the ALJ's finding that Plaintiff's failure to follow prescribed treatment casts doubt on whether he was really in as much pain as he told everyone. Dkt. 13 at 14.

In sum, the ALJ properly evaluated Plaintiff's statements about the intensity, persistence and limiting effects of his pain and found they were not substantiated by objective medical evidence, and were instead severely undermined by record evidence.

II.     Lay Witness Testimony

Plaintiff contends the ALJ erroneously failed to consider a lay witness observation by a Social Security Administration field office employee contained within the record. Dkt. 13 at 18.

A.  Lay Witness Regulations

The ALJ is required to provide a germane reason to discount lay witness testimony. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

B.  Analysis

A Social Security Administration (SSA) field office employee conducted an in-person interview of Plaintiff on July 12, 2019. Dkt. 13 at 18. That employee observed that Plaintiff

> "… appeared to be aloof at times, he squinted whenever he was trying to read something and would end up just handing the document over and asking me to get the information off of it. [H]e did not appear to be a good historian but did bring a lot of paper documents with him. [H]e didn't always understand everything being said and questions would have to be repeated and restated."

AR 240. According to Plaintiff, the Court should hold that the ALJ committed harmful error by failing to fully credit these observations. Dkt. 13 at 18.

The revised regulations state, ALJs are "not required to articulate how [they] consider evidence from nonmedical sources" using the requirements that apply to medical opinions. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Moreover, failing to discuss this type of evidence is harmless where the nonmedical witness describes limitations already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the nonmedical statement. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012)(an error is harmless if it is not prejudicial to the claimant or it is "inconsequential" to the ALJ's "ultimate nondisability determination").

The Court finds the SSA employee's observations were sufficiently accounted for by the ALJ's consideration of Plaintiff's testimony and the medical evidence, and no error was committed by failing to specifically address this redundant statement in her opinion.

### III. Medical Evidence and the RFC

Plaintiff argues the ALJ wrongly rejected some of the medical evidence.

#### A. Medical Evidence Regulations

The regulations regarding evaluation of medical evidence were amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion[1], the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

B. Analysis

Plaintiff contends the above regulations are "partially invalid" to the extent they "purport to make the factors of firsthand contact, effort to cure, longitudinal relationship, and special medical expertise irrelevant" or "relieve an ALJ of the duty to address these key factors in her analysis". Dkt. 13 at 3. Plaintiff acknowledges the Ninth Circuit's holding in *Woods* that the revised regulations displaced longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Woods*, 32 F. 4th at 792. However, he argues that since no *en banc* panel (nor the Supreme Court) has overruled these

---

[1] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F. 4th 785, 787 (9th Cir. 2022), *petition for rehearing pending*. As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

standards they remain in place and the ALJ must "account for whether a reporting physician has had firsthand contact or engaged in an effort to cure". Dkt. 13 at 3-6.

The Court declines Plaintiff's invitation to disregard controlling case law, and will instead apply the revised regulations in assessing Plaintiff's arguments.

    i.  <u>Russell Faria, D.O.</u>

On January 28, 2020, Russell Faria, D.O. (Faria) examined Plaintiff at the request of state disability services, reviewed some of Plaintiff's prior medical records, and ultimately opined that in an eight-hour workday Plaintiff would be restricted in a number of relevant functional categories. AR 773-74.

The ALJ found parts of Faria's opinion persuasive and other parts not. AR 22. For instance, Faria wrote, "Overhead work-restrict because of cervical spine condition" (AR 773) and the ALJ limited Plaintiff to only occasional overhead reaching (AR 19). Similarly, Faria further stated, "Fingering, grasping-restrict fine or forceful fingering or grasping" (AR 773) and the ALJ restricted Plaintiff in those areas, stating he can only "frequently handle, finger, feel on the right" (AR 19). However, the ALJ rejected Faria's opinion that Plaintiff was limited to less than light exertional level work (AR 22, 773), pointing to many exam findings showing Plaintiff had full strength (*see* AR 20, *citing* AR 328, 340, 360, 390, 504, 525), and records that "often indicate that the objective findings do not support the claimant's subjective complaints" (*see* AR 20, *citing* AR 327, 580-582, 713-15, 826-27, 870).

According to Plaintiff, these were not "legitimate reasons supported by substantial evidence" to discredit Faria's opinion. Dkt. 13 at 6-7. For the reasons already discussed, *supra*, the Court disagrees. The Court further notes that Faria, himself, stated that his "Evaluation is based upon the history given by the claimant, the objective medical findings noted during the

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 10

examination, the information obtained from the review of prior medical records presented, with the assumption that this material is true and correct." AR 774.

Finally, to the extent Plaintiff contends Faria's statements regarding Plaintiff's "painful" range of motion and decreased sensation were also wrongly rejected, the Court concurs with the Commissioner that these are not clinical opinions that the ALJ was required to discuss. Dkt. 13 at 7; Dkt. 14 at 10.

ii. <u>Bruce Kaler, M.D.</u>

On May 24, 2019, Bruce Kaler, M.D. (Kaler) completed a form for the Washington State Department of Labor and Industries indicating that Plaintiff should be "off work" from May 24, 2019 to May 30, 2030. AR 22, 304. The ALJ found this opinion was "neither inherently valuable nor persuasive," because it was "on matters reserved to the Commissioner." AR 22. She wrote:

> The claimant testified that Dr. Kaler was his workers' compensation doctor, and he had only one visit with him. Dr. Kaler's opinions regarding the claimant being "off work" are neither inherently valuable nor persuasive, as they are on matters reserved to the Commissioner (20 CFR 404.1520b(c) and 416.920b(c)). **Additionally, there is no evidence to support keeping the claimant off work for a period of over 10 years into the future. The claimant testified that this doctor used the ten year period because this was as far out as his computer would go**.

AR 22 (emphasis added).

According to Plaintiff, the ALJ wrongly rejected this opinion because it "is consistent with and confirms the validity of [] Faria's opinion". Dkt. 13 at 7; AR 22. Yet, under the revised regulations, statements that a claimant is or is not able to work are inherently neither valuable nor persuasive. 20 C.F.R. §§ 404.1520b(c), 416.920b(c). In fact, under the revised regulations, the ALJ does not need to provide any analysis about how she considered this type of evidence. *Id*. Therefore, this Court finds no error in the ALJ's rejection of Kaler's opinion.

### iii. Lezlie Pickett, Ph.D.

On February 18, 2020, Lezlie Pickett, Ph.D. (Pickett), a consultative evaluator who performed in-person testing on Plaintiff, opined that he did not have any mental impairments. AR 778-786. The ALJ cited Pickett in support of her finding, at step two of the sequential evaluation, that Plaintiff does not have a severe mental impairment. AR 18.

Pickett's report details "numerous inconsistencies and contradictions" in Plaintiff's observed behavior during the exam, noting, "There appears to be a discrepancy between what [Plaintiff] is capable of doing versus what he is willing or motivated to do." AR 785. Pickett pointed to things like Plaintiff "suddenly profess[ing] an inability to remember his own address or phone number" even though he correctly identified them at the start of the evaluation. AR 782. She stated that Plaintiff "claimed he couldn't recognize written or spoken words," which Pickett thought was "absolutely ridiculous since we had been speaking 'words' for the past two hours AND he had read the Informed Consent Form in detail and asked some questions about the information it contained, clearly indicating that he had been able to 'recognize' written words." AR 782-83 (emphasis in original). Picket concluded that Plaintiff's "claims were not at all credible and most of the claims he was suddenly making had been previously disproved by his very own actions and demonstrated abilities throughout the evaluation (and after)." AR 783.

Plaintiff contends that it is "apparent from Dr. Pickett's intemperate language that she was not qualified to impartially evaluate Kennedy or any other disability claimant." Dkt. 13 at 7. This argument is unsupported by any authority, and defies logic. Use of emphatic language to describe a claimant's malingering behavior is not a legitimate basis to reject a medical source under the regulations. Further, as the Commissioner notes, when an ALJ decides step two in a claimant's favor (and continues to the next step of the sequential evaluation) as occurred here,

any alleged error at step two is harmless and cannot be the basis for remand. Dkt. 14 at 12 (*citing Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).

In sum, this Court finds the ALJ sufficiently evaluated the medical evidence and settled upon an RFC that took into account Plaintiff's verifiable limitations. Accordingly, this Court finds no error in the ALJ's step five determination.

## CONCLUSION

In conclusion, this Court finds the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Commissioner's final decision is affirmed.

Dated this 2nd day of September, 2022.

David W. Christel
United States Magistrate Judge